## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EMMANUEL ESAKA, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :   C. A. No. 10-564-MPT |
| | : |
| NANTICOKE HEALTH SERVICES, INC., | : |
| MID-SUSSEX MEDICAL CENTER, INC., | : |
| t/a MID-SUSSEX MEDICAL CENTER, | : |
| MARGARET CROCKETT and | : |
| JOSEPH STOKES, | : |
| | : |
| Defendants. | : |

## MEMORANDUM ORDER

## I.  INTRODUCTION

On June 30, 2010, plaintiff Emmanuel Esaka ("Esaka") filed a complaint against

defendants Nanticoke Health Services, Inc., Mid-Sussex Medical Center, Inc.

(collectively, "Nanticoke"), and individual defendants Margaret Crockett ("Crockett") and

Joseph Stokes ("Stokes").[1]  The complaint alleges Esaka was subjected to

discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e, *et seq.*, and the Delaware Discrimination in Employment Act ("DDEA"),

19 Del. C. § 711(a)(1).[2]  The complaint also alleges a breach of the Physician

Employment Agreement entered into between Esaka and Nanticoke.[3]

On August 13, 2010, Nanticoke filed a motion to dismiss pursuant to Fed. R. Civ.

P. 12(b)(6), arguing that all of Esaka's claims are subject to a dispute resolution clause

---

[1]  D.I. 1.

[2]  *Id.*  Esaka received a Right to Sue Letter from the Equal Employment
Opportunity Commission ("EEOC") on April 7, 2010.  *Id.*, Ex A.

[3]  D.I. 1, Count IV.

requiring non-binding mediation and, if unsuccessful, binding arbitration of those claims.[4]   Alternatively, Nanticoke argues that Esaka's selection of a federal forum bars his discrimination and retaliation claims under the DDEA.[5]   Crockett and Stokes also filed a motion to dismiss on August 13, 2010, arguing that no cause of action exists under Title VII against individual defendants.[6]   The parties completed briefing on these motions on October 28, 2010.[7]   For the reasons stated below, the court grants both motions in full.

## II. BACKGROUND

Esaka is a black male and a permanent resident of the United States eligible to apply for citizenship in 2011.[8]   Esaka was employed by Nanticoke at Nanticoke Hospital in Seaford, Delaware ("the Hospital") from September 2, 2008 to May 29, 2009 as an Attending Physician in Obstetrics and Gynecology.[9]   Prior to beginning work, Esaka executed a Physician Employment Agreement ("the Agreement") with Nanticoke.   The Agreement contained the following dispute resolution clause:

> DISPUTE RESOLUTION.   In addition to the right of termination specified in this Agreement, with the exception of a claim made by Center that Physician has breached Section 25 of this Agreement for which Center seeks injunctive relief and/or damages, all claims or controversies concerning this Agreement or arising in any way out of the performance of this Agreement which the parties cannot readily resolve, including any dispute regarding Physician's compensation, shall be submitted by the parties within thirty (30) days to non-binding mediation, under the Alternative Rules of Procedure for Mediation of the American Health

---

[4]   *See* D.I. 10; D.I. 11.
[5]   *See* D.I. 10; D.I. 11.
[6]   *See* D.I. 12; D.I. 13.
[7]   *See* D.I. 27.
[8]   D.I. 1 at ¶ 12.
[9]   *Id.* at ¶¶ 11, 13.

Lawyers Association ("AHLA").  If the dispute, controversy or claim is not resolved through mediation within ten (10) days after the appointment of a dispute resolver, the dispute shall be automatically submitted to a single arbitrator pursuant to the AHLA's arbitration rules.  Judgement on the award rendered by the arbitrator, which shall be in accord with the law of the State of Delware, may be entered in any court having jurisdiction thereof and shall be binding on the parties.  No disclosure of the award shall be made by the parties, except as required by the law or as necessary or appropriate to effectuate the terms thereof.  Each party shall bear its own expenses, including attorney's fees incurred in the mediation and/or arbitration, except that the costs of the mediator and/or arbitrator shall be equally divided between the Physician and the Center.  The obligations of this Section shall survive termination of this Agreement.[10]

The complaint alleges that, during his employment at the Hospital, Esaka was routinely referred to as "n****r" by Crockett, a white female Medical Assistant for Nanticoke.[11]  Esaka complained about these comments, both orally and via email, to Stokes (the Director of Physician Practice Operations at the Hospital) and Thomas Brown.[12]  Stokes assured Esaka that the problems with Crockett would be addressed, either by transferring her or through some other means.[13]  Crockett, however, was never transferred; she was moved to the front desk where she continued to make racial slurs and disparaging remarks about Esaka to staff and patients.[14]

The complaint further alleges that, during the course of Esaka's employment, he was excluded from meetings held by Stokes and other physicians,[15] and that he received a smaller salary than other physicians in his practice.[16]

---

[10]  D.I. 11, Ex. A at ¶ 19.
[11]  D.I. 1 at ¶ 14.
[12]  *Id.* at ¶ 16.
[13]  *Id.* at ¶ 18.
[14]  *Id.* at ¶ 19.
[15]  *Id.* at ¶ 20.
[16]  *Id.* at ¶ 21.

## III. LEGAL STANDARD

### A. Motions to Dismiss

Fed. R. Civ. P. 12(b)(6) permits a party to move to dismiss a complaint for failure

to state a claim upon which relief can be granted.  The purpose of a motion under Rule

12(b)(6) is to test the sufficiency of the complaint, not to resolve disputed facts or decide

the merits of the case.[17]  "The issue is not whether a plaintiff will ultimately prevail but

whether the claimant is entitled to offer evidence to support the claims."[18]  A motion to

dismiss may be granted only if, after "accepting all well-pleaded allegations in the

complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is

not entitled to relief."[19]  While the court draws all reasonable factual inferences in the

light most favorable to plaintiff, it rejects unsupported allegations, "bald assertions," and

"legal conclusions."[20]

To survive a motion to dismiss, Esaka's factual allegations must be sufficient to

_____

[17] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

[18] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotations and citations omitted); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007) ("[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder.").

[19] *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (citing *In re Burlington*, 114 F.3d at 1420).

[20] *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted); *see also Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) (rejecting "unsupported conclusions and unwarranted inferences") (citations omitted); *see generally Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) ("It is not . . . proper to assume [plaintiff] can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged.").

"raise a right to relief above the speculative level . . . ."[21]  Esaka is thus required to

provide the grounds of his entitlement to relief beyond mere labels and conclusions.[22]

Although heightened fact pleading is not required, "enough facts to state a claim to relief

that is plausible on its face" must be alleged.[23]  A claim has facial plausibility when a

plaintiff pleads factual content sufficient for the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged.[24]

 Courts generally consider only the allegations contained in the complaint, exhibits

attached to the complaint, and matters of public record when reviewing a motion to

dismiss.[25]  Under Fed. R. Civ. P. 12(d), if a court examines materials outside the

pleadings the motion is generally treated as one for summary judgment.  However,

certain additional materials may be addressed without converting the motion to dismiss

into a motion for summary judgment.  Indeed, cases have allowed consideration of

matters "incorporated by reference or integral to the claim, items subject to judicial

notice, matters of public record, orders, items appearing in the record of the case and

---

[21] *Twombly*, 550 U.S. at 555 (citations omitted); *see also Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

[22] *See Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[23] *Twombly*, 550 U.S. at 570; *see also Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) ("In its general discussion, the Supreme Court explained that the concept of a 'showing' requires only notice of a claim and its grounds, and distinguished such a showing from 'a pleader's bare averment that he wants relief and is entitled to it.'") (quoting *Twombly*, 550 U.S. at 555 n.3).

[24] *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

[25] *See, e.g, Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).

5

exhibits attached to the complaint whose authenticity is unquestioned . . . ."[26]   A party is entitled to notice and a fair opportunity to respond to any evidence the court might consider in its review of a motion to dismiss.  Where a party has such notice, however, it is proper for the court to consider that evidence.[27]

## B.  The Federal Arbitration Act

Section 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, provides in relevant part that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  Federal law thus recognizes

---

[26]   5B CHARLES A. WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2007); *see also Buck v. Hampton Tp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citing 5B CHARLES A. WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 (2004)); *See also Burlington*, 114 F.3d at 1426 (A "document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment.") (alteration in original, internal quotations and citations omitted); *Pension Benefit*, 998 F.2d at 1196 ("We now hold that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

[27]   In this case, the Physician Employment Agreement between Esaka and Nanticoke was not attached to the complaint.  However, the Agreement was referenced in the complaint at paragraph 40, was integral to Esaka's breach of contract claim, and was attached to Nanticoke's motion to dismiss.  The court will therefore consider the Agreement in evaluating the present motions.  *See Burlington*, 114 F.3d at 1426 ("[T]he primary problem raised by looking to documents outside the complaint–lack of notice to the plaintiff–is dissipated '[w]here plaintiff has actual notice . . . and has relied upon these documents in framing the complaint.'") (second alteration in original) (quoting *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993)); *Pension Benefit*, 998 F.2d at 1196-97 ("When a complaint relies on a document . . . the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished.")

a strong public policy in favor or arbitration.[28]  By its terms, the FAA mandates that district courts shall direct the parties to proceed to arbitration on issues as to which a valid arbitration agreement applies.[29]  "'Nothing short of a showing of fraud, duress, mistake' or some other compelling ground to invalidate a contract," therefore, "will permit a court to preclude the enforceability of an agreement to arbitrate."[30]

## IV. DISCUSSION

### A. State Law Claims under the DDEA (Count III)

The DDEA bars a plaintiff from simultaneously seeking remedies for employment discrimination under both federal and state law in federal court.[31]  In the course of briefing, Esaka conceded this point and offered to voluntarily dismiss his state law claims.[32]  The court will therefore grant defendants' motion to dismiss Count III of the complaint.

---

[28] *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) ("questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration"); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985) (describing federal policy favoring arbitration as "emphatic").

[29] 9 U.S.C. §§ 3, 4.

[30] *Thornburg v. PAK 2000, Inc.*, C.A. 03-824-JJF, 2004 WL 234650, at *1 (D. Del. Feb. 2, 2004) (quoting *Seus v. John Nuveen & Co.*, 146 F.3d 175, 184 (3d Cir. 1998)).

[31] *See* 19 Del. C. § 714(c); *Daughtry v. Family Dollar Stores, Inc.*, 634 F. Supp. 2d 475, 483 (D. Del. 2009) (dismissing state law claims because plaintiffs were barred from simultaneously seeking remedies under Title VII and the DDEA); *Schlifke v. Trans World Entm't Corp.*, 479 F. Supp. 2d 445, 450 (D. Del. 2007) (holding that plaintiff, having elected to prosecute a discrimination claim under Title VII, was barred from simultaneously seeking remedies under the DDEA).

[32] D.I. 24 at 1.

**B.  Title VII Claims Against Individual Defendants Crockett and Stokes**

Only an "employer" can be held liable for discrimination under Title VII.[33]  Title VII

defines an employer as "a person engaged in an industry affecting commerce who has

fifteen or more employees . . . ."[34]  Courts in the Third Circuit have consistently

interpreted these provisions to bar discrimination claims against individual employees

and supervisors.[35]  In this case, the complaint alleges that at all relevant times Crockett

was a Medical Assistant and Stokes was the Director of Physician Practice Operations

at Nanticoke Hospital.[36]  Significantly, both Crockett and Stokes are alleged to have

been co-employees and/or supervisors of Esaka at the Hospital,[37] and neither are

alleged to have employed Esaka.  Esaka makes no argument on this issue beyond the

allegations in the complaint.  The court is therefore satisfied that there is no basis for

individual liability against Crockett or Stokes, and will grant their motion to dismiss all

Title VII claims against them.

---

[33]  42 U.S.C. § 2000e-2(a).

[34]  42 U.S.C. § 2000e(b).

[35]  *See Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1077-78 (3d Cir. 1996) (en banc) (finding that "Congress did not contemplate that [Title VII] damages would be assessed against individuals who are not themselves the employing entity" and that "Congress did not intend to hold individual employees liable under Title VII"); *Kachmar v. Sungard Data Sys., Inc.*, 109 F.3d 173, 183-84 (3d Cir. 1997) (relying on *Sheridan* in affirming dismissal of two of plaintiff's supervisors in Title VII sex discrimination case); *see also Smiley v. Daimler Chrysler*, 538 F. Supp. 2d 711 (D. Del. 2008); *Riley v. Del. River & Bay Auth.*, 457 F. Supp. 2d 505 (D. Del. 2006); *Maull v. Div. of State Police*, 141 F. Supp. 2d 463 (D. Del. 2001).

[36]  D.I. 1 at ¶¶ 9, 10.

[37]  *Id.*

**C.  Arbitrability of Remaining Claims**

**1.  Discrimination and Retaliation under Title VII**

Esaka does not contest the validity of the Physician Employment Agreement or the arbitration clause contained therein; instead, he mounts a two-pronged attack against its application to this dispute.  The first wave in this attack argues that:  (1) his discrimination claim has "nothing to do with [his] job performance or employment" and thus outside the scope of the Agreement; (2) public policy dictates that redress for statutory employment rights should be chosen by the individual rather than directed by the employer; (3) the arbitration clause does not explicitly waive his right to bring a Title VII action in a court of law; and (4) the arbitration clause is supervened by Title VII pursuant to paragraph 22 of the Agreement.  The court addresses these failing arguments in turn.

Esaka's first contention (i.e., that his discrimination claim is outside the scope of the Agreement) is specious.  The arbitration clause clearly applies to "all claims or controversies concerning this Agreement *or arising in any way out of the performance of this Agreement* which the parties cannot readily resolve, including any dispute regarding . . . compensation."[38]  Every act of discrimination that Esaka alleges occurred while on the job and/or related to the terms, conditions, or privileges of his employment.[39]

---

[38]  D.I. 11, Ex. A at ¶ 19 (emphasis added).

[39]  *See* D.I. 1 at ¶ 13 (alleging that "at all times material herein Plaintiff was working at Nanticoke where the alleged acts of discrimination and retaliation took place"); *id.* at ¶ 14 (alleging that, "[w]hile at Nanticoke, Plaintiff was routinely referred to as 'n****r' by Defendant Crockett"); *id.* at ¶ 26 (alleging Defendants discriminated against Esaka "with respect to the terms, conditions and privileges of his employment"); *id.* at ¶ 20 (alleging that "during the course of his employment, Plaintiff was excluded from meetings held by Defendant Stokes and other physicians"); *id.* at ¶ 21 (alleging a

Esaka's suggestion that such discrimination arises from invidious motives (and not actual job performance) may carry some metaphysical force, but is insufficient to overcome the strong public policy in favor of arbitration and the broad language of the Agreement.[40]

Second, though Esaka might wish public policy to preclude waiver of an individual's right to a judicial forum for statutorily protected rights, his sentiment is at odds with authority.  The Supreme Court has made clear that statutory claims may in fact be subject to arbitration.[41]  Third Circuit caselaw is equally clear that Title VII discrimination claims do not require a judicial forum and that agreements to arbitrate such claims are enforceable under the FAA.[42]

---

discrepancy between Esaka's yearly salary ($225,000) and the yearly salaries of other physicians in his practice ($235,000)); *id.* at ¶ 32 (alleging Defendants retaliated against Esaka "by dismissing him from his employment").

[40]  *See United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960) (Courts must defer to arbitration "unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage."); *United Eng'g & Foundry Employees Ass'n Indep. Union v. United Eng'g & Foundry Co.*, 389 F.2d 479, 482 (3d Cir. 1967) ("'In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where . . . the arbitration clause [is] quite broad.'") (quoting *United Steelworkers*, 363 U.S. at 584-85).

[41]  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (holding in age discrimination case that "statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA"); *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) ("This duty [of the courts] to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights.").

[42]  *See Seus v. John Nuveen & Co.*, 146 F.3d 175, 182 (3d Cir. 1998) (finding "Title VII entirely compatible with applying the FAA to agreements to arbitrate Title VII claims"), *overruled on other grounds by Green Tree Financial Corp. Ala. v. Randolph*, 531 U.S. 79 (2000); *Pelegrin v. U.S. Filter Corp.*, C.A. 97-390-SLR, 1998 WL 175880 (D. Del. Mar. 31, 1998) (rejecting the argument that employment discrimination claims are precluded from mandatory arbitration provisions); *Dunkley v. Mellon Investor*

Third, Esaka's observation that the arbitration clause does not explicitly waive his statutory right to bring a Title VII action in a court of law is irrelevant because an explicit waiver was unnecessary in this case.  While it is true that a *union-negotiated* waiver of an employee's statutory rights to a judicial forum for employment discrimination claims must be "clear and unmistakable," this is not the rule where an individual has waived his own rights by agreeing to arbitrate.[43]  The concern expressed in the collective bargaining cases cited by Esaka regarding the tension between aggregate representation and individual statutory rights does not apply here.

Fourth, the court disagrees that the arbitration clause is supervened by Title VII. Paragraph 22 of the Agreement makes its provisions subject to "applicable state, local, and federal law and rules and regulations promulgated by state, local and federal agencies . . . ."  Paragraph 22 further states:

> Any provisions of law or governmental rules and regulations that invalidate or otherwise are inconsistent with the terms of this Agreement *or that would cause one or both of the parties to be in violation of law . . .* shall be deemed to have superseded the terms of this Agreement, *provided, however, that the parties shall exercise their best efforts to accommodate the terms and intents of this Agreement to the greatest extent possible consistent with the requirements of law.*  (emphasis added)

As discussed above, submitting discrimination claims that could otherwise be brought in federal court to an arbitrator does not contravene the letter or the spirit of Title VII.  The clear intent of the Agreement–to arbitrate disputes arising in any way out of its

---

*Services*, C.A. 06-3501 (JAG), 2007 WL 3025730 (D.N.J. Oct. 15, 2007) (granting employer's motion to compel arbitration of employee's Title VII claims based on sex and sexual orientation); *Hearon v. AstraZeneca LP*, C.A. 02-3189, 2003 WL 21250640 (E.D. Pa. Mar. 24, 2003) (compelling arbitration of employee's Title VII sex discrimination claims).

[43]  *See Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 80-81 (1998).

performance–should therefore be given effect.

Esaka's second line of attack on arbitrability asserts that Nanticoke waived any right to compel arbitration by failing to demand it when Nanticoke:  (1) became aware of the alleged discrimination in September 2008; (2) participated in Esaka's EEOC case filed on June 10, 2009; (3) terminated his employment in July 2010; and (4) appeared in the present action filed in this court.  These arguments also miss the mark.

With regard to Esaka's first contention, it is immaterial that Nanticoke was aware of any alleged discrimination in 2008 because it was Esaka, not Nanticoke, who sought relief.  While the Agreement gives each party the right to invoke arbitration if and when it considers a dispute unresolvable, it does not obligate either party to preemptively initiate arbitration on the other's behalf.

This logic applies with equal force to Esaka's termination in July 2010.  Esaka likely had the right to demand arbitration following his termination, but his failure to do so did not extinguish Nanticoke's reciprocal right to compel arbitration later.  The court's conclusion in this regard is buttressed by the language of the arbitration clause itself, which expressly reserves Nanticoke's right of termination.

Nanticoke's participation in the EEOC proceedings initiated by Esaka does not waive its right to compel arbitration either.  Although the Third Circuit has not directly addressed whether a defendant must move to arbitrate during administrative proceedings, numerous other federal appellate and trial courts have found participation in such proceedings alone insufficient to constitute waiver.[44]  The court finds the

---

[44] *See Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1, 16 (1st Cir. 2005) ("The employer's failure to initiate arbitration during the pendency of [EEOC]

reasoning of these cases persuasive, and Esaka fails to cite any law attacking that reasoning or supporting his own position.

Esaka's final argument (only nebulously made) is that Nanticoke's participation in this lawsuit constitutes waiver.  While actively litigating a case on the merits can result in waiver where it causes prejudice to the other party,[45] nothing approaching the requisite prejudice is present here.  Indeed, the present motion to dismiss in favor of arbitration represents Nanticoke's very first responsive submission to the court.  There has been no exchange of pleadings, substantive motions, or formal discovery by the parties. Further, due to the court's consideration of this motion, no Rule 16 conference has

---

proceedings merely reflects a desire to avoid inefficiency and is not action inconsistent with a desire to arbitrate."); *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1223 (11th Cir. 2000) (rejecting argument that defendant's participation in EEOC proceedings constituted waiver because demand for arbitration was made promptly after lawsuit was filed and "there was no delay or action by [defendant] inconsistent with an intent to arbitrate"); *Volpe v. Jetro Holdings*, C.A. 08-3521, 2008 WL 4916027, at *7 (E.D. Pa. Nov. 14, 2008) (collecting district court cases declining to find waiver where defendant failed to demand arbitration during EEOC proceedings); *see also Gilmer*, 500 U.S. at 28-29 ("[T]he mere involvement of an administrative agency in the enforcement of a statute is not sufficient to preclude arbitration.").

[45] *See Gavlik Constr. Co. v. H.F. Campbell Co.*, 526 F.2d 777, 783 (3d Cir. 1975) ("We believe it is not the inconsistency of a party's actions, but the presence or absence of prejudice which is determinative of the issue of waiver.") (internal quotations and citation omitted), *overruled on other grounds by Zosky v. Boyer*, 856 F.2d 554 (3d Cir. 1988); *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 926-27 (3d Cir. 1992) (setting out a non-exclusive list of factors relevant to the prejudice inquiry, including:  (1) the timeliness or lack thereof of a motion to arbitrate; (2) the degree to which the party seeking to compel arbitration has contested the merits of its opponent's claims; (3) whether that party has informed its adversary of its intent to arbitrate even if it has not yet filed a motion to compel; (4) the extent of its non-merits motion practice; (5) its assent to the district court's pretrial orders; and (6) the extent to which both parties have engaged in discovery); *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1068-69 (3d Cir. 1995) (noting that "waiver will normally be found only 'where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery'") (quoting *Gavlik*, 526 F.2d at 783).

occurred and no resultant scheduling order has issued.  Hence, it is clear that Nanticoke did not invoke the machinery of litigation to compromise Esaka's position or to discover information unavailable in arbitration, but rather demanded arbitration as early as feasible once litigation had begun.

## 2.  Breach of Contract

The complaint alleges a breach of the Physician Employment Agreement–the same agreement containing the arbitration clause at issue.  Because the broad language of that clause encompasses all claims or controversies concerning the Agreement or arising in any way out of the performance of the Agreement, and because Esaka offers no alternative interpretation of that clause (much less one that would place the asserted dispute outside its coverage), the court finds Esaka's breach of contract claim arbitrable as well.

## V.  CONCLUSION

If a party to a binding arbitration agreement is sued in a federal court on a claim that the plaintiff has agreed to arbitrate, that party is entitled under the FAA to a stay of the court proceedings pending arbitration (Section 3) and to an order compelling arbitration (Section 4).  If all the claims involved in an action are arbitrable, however, a court may dismiss the action instead of staying it.[46]  Because all remaining claims in this case are arbitrable, the court will dismiss the action and order the parties to alternative dispute resolution consistent with this opinion and the terms of the Agreement.

_____

[46] *Seus*, 146 F.3d at 179 (citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992), and *Dancu v. Coopers & Lybrand*, 778 F. Supp. 832, 835 (E.D. Pa. 1991), *aff'd*, 972 F.2d 1330 (3d Cir.1992)).

14

## VI.  ORDER

For the reasons stated above, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1.  Defendants Margaret Crockett and Joseph Stokes' motion to dismiss (D.I. 12) is GRANTED, and they are DISMISSED from this matter;

2.  Defendants Nanticoke Health Services and Mid-Sussex Medical Centers' motion to dismiss (D.I. 10) is GRANTED as follows:

   a.  The complaint filed by plaintiff Emmanuel Esaka (D.I. 1) is DISMISSED in its entirety;

   b.  The parties are ordered to proceed to alternative dispute resolution in accordance with the terms of the Physician Employment Agreement as to Counts I, II, and IV of the complaint only, Count III having been voluntarily dismissed.

Date:  ___November 23, 2010___        ___/s/ Mary Pat Thynge___
                                   United States Magistrate Judge